Affirmed and Memorandum Opinion
filed November 30, 2010.

In
The

Fourteenth
Court of Appeals



NO. 14-09-00980-CV



In the Interest
of R.D.S., Minor Child, Appellant 



On Appeal from
the 315th District Court

Harris County, Texas

Trial Court
Cause No. 2008-10043J



 

MEMORANDUM OPINION 

In this accelerated appeal, a mother challenges the
trial court’s judgment terminating her parental rights to a minor child,
asserting the evidence is legally and factually insufficient to support the termination
and the finding that termination is in the best interest of the minor child. 
We affirm.

Factual and Procedural
Background

The Texas Department of Family and Protective
Services (hereinafter the “Department”) filed an original petition for
protection of a child in December 2008, seeking temporary sole managing conservatorship
of ten-month-old R.D.S. (hereinafter “Rebecca”),[1]
and termination of the mother’s and father’s[2]
parental rights in a suit affecting the parent-child relationship.  The
Department cited a host of grounds in support of terminating the mother
Jennifer’s parental rights under the Texas Family Code, alleging that
termination of Jennifer’s parental rights would be in Rebecca’s best interest.  

The trial court granted the Department temporary managing
conservatorship of Rebecca; the child was placed in foster care.  Jennifer was
required to perform the following tasks, as outlined in a family service plan:

·       
Contact the Mental Health and Mental Retardation Association for
an evaluation, follow all recommendations, and provide verification of
compliance;

·       
Participate in court hearings, family visits, permanency
conferences, and other meetings requested by the Department;

·       
Maintain a safe and stable environment free from hazards or
dangerous situations, maintain legal employment for more than six months, and
demonstrate her ability to provide for her children’s basic physical, medical,
developmental, and education needs;

·       
Submit to random drug testing;

·       
Actively participate in parenting classes geared toward
alternative discipline methods and submit a certificate of completion once the
course is completed; and

·       
Attend individual therapy and follow all recommendations made by
service providers.

At trial during October 2009, Jennifer testified that
Rebecca was removed from her care when she was arrested and incarcerated for
prostitution and child endangerment.  Jennifer pleaded “guilty” to both
charges.  According to Jennifer, she left Rebecca and her two other children, both
under four years of age, who are not subject to this appeal, in a hotel room
with a babysitter while she engaged in prostitution.  After her arrest for
prostitution, Jennifer and police officers returned to the hotel and discovered
that the babysitter was not in the room.  Jennifer claimed the babysitter left
the room to get food while the children were sleeping.  Jennifer could not
recall the babysitter’s full name, but indicated the babysitter’s nickname was
“Mo” and was someone she knew from her past.  Other evidence indicates that
Jennifer previously had told the Department that a person named “Misty” was
babysitting the children and she did not know Misty’s last name.  Jennifer pleaded
“guilty” to the charges for prostitution and child abandonment and was
incarcerated for three months.  

Jennifer acknowledged receiving a family service plan
that required her to maintain a safe, stable environment and a job.  At trial,
Jennifer testified that she had neither a home nor a job.  Jennifer stated she
had a home that she recently left because of mold problems and that she would
seek to buy another home when she found a job; in the meantime, she was living
with a friend.  Jennifer claimed to have had a job until recently, but was
fired because she had to attend court and worked too many hours.[3]  She
indicated that she was steadily searching for another job and planned to attend
nursing school in the future.

Jennifer claimed that she submitted to all requests
for random drug tests, which she testified yielded negative results, and that
she was currently participating in parenting classes.  Jennifer testified that
she did not receive a certificate for successfully completing individual
therapy and that the Mental Health and Mental Retardation Association evaluated
her, but had no services to offer her.  She visited Rebecca at every
opportunity and participated in court hearings unless she was incarcerated.

Jennifer stated that the Department had been conducting
investigations with respect to her two older children since 2007 and that the
Department had set a goal for Jennifer’s reunification with those children.  The
evidence reflects that Jennifer’s older children had been returned to her and
the Department was in the process of non-suiting claims stemming from the 2007
investigation of physical abuse and neglectful supervision when Jennifer was
arrested in connection with the case sub judice.  Jennifer testified that her
situation has worsened since 2007 because she no longer has a home and a job. 

Jennifer recognized that Rebecca had been in foster
care for the last ten months (since Jennifer’s 2008 arrest) and agreed that
foster care is not an appropriate environment for children because it lacks
permanency.  Jennifer admitted at the time of trial that it was in Rebecca’s
best interest to remain in foster care, confirming that she could not provide a
safe and stable environment for Rebecca at that time.  But, Jennifer explained that
with a little more time, she would be able to provide a safe place for Rebecca
when she “got back on her feet.”  Jennifer indicated that, as Rebecca’s mother,
she could give Rebecca what she needs and let her know “where she comes from;
who she is; and the people in her family.”  Jennifer believed that it would be
in Rebecca’s best interest to award the Department permanent managing
conservatorship with the goal of working toward reuniting Jennifer and Rebecca. 


A Department employee who was familiar with Rebecca’s
case explained that termination of Jennifer’s rights was appropriate because
Jennifer had not completed the service tasks required of her and could not
provide a safe and stable environment for Rebecca.  The Department had been
investigating allegations against Jennifer since 2007 and indicated that
Jennifer’s participation in prostitution was conduct that was dangerous to her
children’s well-being.  According to this employee’s testimony, the Department was
willing to work with Jennifer for the children to benefit from permanency.

In its decree for termination, dated October 12,
2009, the trial court found that clear and convincing evidence existed that
Jennifer committed the following acts:

·       
Knowingly placed or knowingly allowed Rebecca to remain in
conditions or surroundings which endanger the physical or emotional well-being
of the child, pursuant to section 161.001(1)(D) of the Texas Family Code;

·       
Engaged in conduct or knowingly placed the child with persons who
engaged in conduct which endangers the physical or emotional well-being of the
child, pursuant to section 161.001(1)(E) of the Texas Family Code; and

·       
Failed to comply with the provisions of a court order that
specifically established the actions necessary for the mother to obtain the
return of the child who has been in the permanent or temporary managing
conservatorship of the Department for not less than nine months as a result of
the child’s removal from the parent under Chapter 262 for the abuse or neglect of
the child, pursuant to section 161.001(1)(O) of the Texas Family Code.

The trial court determined
that clear and convincing evidence exists that termination of the parent-child
relationship between Jennifer and Rebecca is in the child’s best interest.  The
trial court awarded sole managing conservatorship to the Department, noting
that appointment of a parent would significantly impair the child’s physical
health or emotional development.  

Analysis

In two issues, Jennifer challenges the legal and
factual sufficiency of the evidence to support the trial court’s parental
termination finding and that termination was in the child’s best interest.  In
her first issue, Jennifer claims the evidence is legally and factually
insufficient to support the trial court’s findings that she committed the acts
set forth in subsections 161.001(1)(D), (E), and (O).

Because termination of
parental rights is a drastic remedy, due process and the Texas Family Code
require the Department to prove the necessary elements by the heightened burden
of proof of “clear and convincing evidence.”  See Tex. Fam. Code Ann. § 161.001 (West
2008); In re B.L.D., 113 S.W.3d 340, 353–54 (Tex. 2003).  “‘Clear and
convincing evidence’ means the measure or degree of proof that will produce in the mind of
the trier of fact a firm belief or conviction as to the truth of the
allegations sought to be established.”  Tex.
Fam. Code Ann. § 101.007 (West 2008).  In this case, the Department had
to prove by clear and convincing evidence that Jennifer engaged in the conduct
specified in sections 161.001(1) (D), (E), or (O) of the Texas Family Code[4] and that
termination of her parental rights is in Rebecca’s best interest.  See Tex. Fam. Code Ann. § 161.001; In re
J.L., 163 S.W.3d 79, 84 (Tex. 2005).  

In reviewing
legal-sufficiency challenges to termination findings, we consider all of the
evidence in the light most favorable to the termination findings to determine
whether a reasonable factfinder could have formed a firm belief or conviction
that these findings are true.  J.L., 163 S.W.3d at 85.  Looking at the
evidence in the light most favorable to the findings means that we presume the
factfinder resolved disputed facts in favor of its findings if a reasonable
factfinder could do so.  Id.  We disregard any evidence that a
reasonable factfinder could have disbelieved or found to have been incredible.  Id.

In reviewing
factual-sufficiency challenges to termination findings, we give due
consideration to evidence that the factfinder reasonably could have found to be
clear and convincing.  J.F.C., 96 S.W.3d at 266.  The
factual-sufficiency inquiry is whether the evidence is such that the factfinder
reasonably could form a firm belief or conviction about the truth of the
Department’s allegations.  Id.  We consider whether the disputed
evidence is such that a reasonable factfinder could not have resolved that
disputed evidence in favor of its finding.  Id.  “If, in light of the
entire record, the disputed evidence that a reasonable factfinder could not have
credited in favor of the finding is so significant that a factfinder could not
reasonably have formed a firm belief or conviction about the truth of the
petitioners’ allegations, then the evidence is factually insufficient.”  Id.
 We give due deference to factual findings, and we do not supplant the
factfinder’s judgment with our own.  See In re H.R.M., 209 S.W.3d 105,
108 (Tex. 2006).

When, as in this case,
the trial court terminated the parent-child relationship on multiple grounds
under section 161.001(1), we may affirm on any one ground because, in addition
to finding that termination is in the child’s best interest, only one predicate
violation under section 161.001(1) is necessary to support a trial court’s
judgment for termination.  See In re A.V., 113 S.W.3d 355, 362 (Tex.
2003); In re E.A.K., 192 S.W.3d 133, 151 (Tex. App.—Houston [14th Dist.]
2006, pet. denied).  Under section 161.001(1)(E), the trial court found that
Jennifer engaged in conduct or knowingly placed Rebecca with persons who engaged
in conduct that endangered the child’s physical or emotional well-being.  See
Tex. Fam. Code Ann. § 161.001(1)(E). 
Under subsection 161.001(1)(E), the term “endanger” means the child was exposed
to loss or injury or jeopardized.  Tex. Dep’t of Human Servs. v. Boyd,
727 S.W.2d 531, 533 (Tex. 1987).

When analyzing a trial
court’s findings under subsection 161.001(1)(E) with respect to physical
endangerment, we determine whether sufficient evidence exists that the
endangerment of the child’s physical well-being was a direct result of the
parent’s conduct, which includes both action or inaction that occurred either
before or after the child’s birth.  See In re A.S., D.S., & L.A.S.,
261 S.W.3d 76, 83 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).  Endangerment
encompasses “more than a threat of metaphysical injury or possible ill effects
of a less-than-ideal environment.”  Boyd, 727 S.W.2d at 533.  Likewise,
although endangerment under subsection 161.001(1)(E) often entails physical
endangerment, the statute does not require that conduct be directed at a child
or that a child suffer actual injury; it is sufficient if the conduct endangers
the emotional well-being of the child.  See id.; In re U.P., 105
S.W.3d 222, 233 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); Robinson
v. Tex. Dep’t of Prot. & Reg. Servs., 89 S.W.3d 679, 686 (Tex.
App.—Houston [1st Dist.] 2002, no pet.).  

Termination under
subsection 161.001(1)(E) must be based on more than a single act or omission; a
voluntary, deliberate, and conscious course of conduct by the parent is
required.  See In re J.W., 152 S.W.3d 200, 205 (Tex. App.—Dallas 2004,
pet. denied).  In considering whether a relevant course of conduct has been
established, a court may properly consider evidence of conduct that occurred
both before and after a child’s birth. See In re S.T., 263 S.W.3d
394, 401–402 (Tex. App.—Waco 2008, pet. denied).  In addition, a court may
consider evidence establishing that a parent continued to engage in endangering
conduct after the child’s removal by the Department after the child no longer
was in the parent’s care, thus showing the parent continued to engage in the
course of conduct in question.  See id.  Although
imprisonment, alone, does not constitute engaging in conduct that endangers a
child, a finding for endangerment is supported if all the evidence, including
imprisonment, demonstrates a course of conduct that has the effect of
endangering the physical or emotional well-being of a child.  See Tex. Fam. Code Ann. § 161.001(1)(E); Robinson,
89 S.W.3d at 686.  

The evidence indicates
that Rebecca was left alone for an unspecified amount of time when Jennifer engaged
in prostitution and when the babysitter left Rebecca and the other children
alone in the hotel room.  According to Jennifer, there is no evidence of abuse,
neglect, poor medical care, poor hygiene, or drug abuse associated with this
incident.  However, parental neglect can be as dangerous to a child’s
well-being as physical abuse.  See In re M.C., 917 S.W.2d 268, 270 (Tex.
1996).  Rebecca was nine months old at the time Jennifer was arrested on the
charges of prostitution and child abandonment, to which she pleaded “guilty.” 
Although Jennifer explained that she left Rebecca and the other children with a
babysitter, the babysitter was not in the hotel room when Jennifer returned to
the hotel with law enforcement authorities.  Jennifer’s conduct in leaving
Rebecca with a person who left the child unattended and whose full name she did
not know could form the basis for the trial court’s determination that Jennifer
failed to protect or supervise Rebecca, which jeopardized or exposed Rebecca to
loss or injury.  See id. (involving evidence that mother left baby home
alone); see also In re M.D.V., No. 14-04-00463-CV, 2005 WL 2787006, at
*6 (Tex. App.—Houston [14th Dist.] Oct. 27, 2005, no pet.) (substitute mem.
op.) (involving a mother who left young children unattended).

Furthermore, Jennifer
held only temporary living arrangements in the ten months Rebecca was in
Jennifer’s care and admitted to frequently moving between an apartment, which
she ultimately could not afford, and the homes of family members and friends
since Rebecca’s birth.  See In re C.A.B., 289 S.W.3d 874, 887 (Tex.
App.—Houston [14th Dist.] 2009, no pet.) (involving a parent who had only
temporary living arrangements before incarceration).  The evidence in the
record indicates that Jennifer was incarcerated for three months following the
criminal charges for prostitution.  During her incarceration, Rebecca was supposedly
in the care of an uncle and the child’s alleged father, although Jennifer was
unable to provide contact information to the Department for either of these individuals
and indicated she did not know her child’s whereabouts.  Generally, conduct
that subjects a child to a life of uncertainty and instability endangers the
physical and emotional well-being of a child.  In re K.R.L., 129 S.W.3d
732, 739 (Tex. App.—Fort Worth 2004, pet. denied).  Finally, given the facts
that the Department previously had investigated Jennifer for physical abuse and
neglectful supervision of Jennifer’s other two children, and those allegations
were in the process of being non-suited by the Department, Jennifer engaged in
conduct that endangered Rebecca by committing the offense of prostitution even
though Jennifer was aware that her parental rights were in jeopardy.  See
Avery v. State, 963 S.W.2d 550, 553 (Tex. App.—Houston [1st Dist.] 1997, no
writ) (providing that criminal activity before and after a child’s birth is
relevant to determining whether a child was endangered under subsection
161.001(1)(E)).  When considered collectively, evidence of Jennifer’s criminal
activities while leaving Rebecca unattended, as well as her imprisonment and
inability to provide a safe, stable environment for Rebecca supports a finding
that Jennifer engaged in a course of conduct that endangered Rebecca’s physical
and emotional well-being.  See Boyd, 727 S.W.2d at 533–34.

Viewing the evidence
in the light most favorable to the trial court’s judgment, a reasonable
factfinder could have formed a firm belief or conviction that Jennifer engaged
in the conduct described in section 161.001(1)(E).  See M.C., 917 S.W.2d
at 270; K.R.L., 129 S.W.3d at 739.  Under the relevant standards of
review, the evidence is legally and factually sufficient to support the trial
court’s finding that Jennifer engaged in the conduct enumerated in section
161.001(1)(E) to warrant termination of Jennifer’s parental rights.  See Tex. Fam. Code Ann. § 161.001(1)(E); M.C.,
917 S.W.2d at 270; K.R.L., 129 S.W.3d at 739.  Because we conclude the
evidence is legally and factually sufficient to support the trial court’s
findings that Jennifer engaged in the conduct prescribed in section
161.001(1)(E), we need not reach Jennifer’s arguments regarding the sufficiency
of the evidence to support the trial court’s findings for termination under
subsections 161.001(1)(D) or (O).  See In re A.V., 113 S.W.3d at 362
(providing that reviewing court may affirm trial court’s judgment for
termination on any one ground because, in addition to a best-interest finding,
only one predicate violation under section 161.001(1) is necessary to support a
trial court’s judgment for termination); In re E.A.K., 192 S.W.3d at 151
(same).  We overrule Jennifer’s first issue.

A statutory act or
omission under section 161.001(1) also must be coupled with a finding that
termination of the parent-child relationship is in the best interest of the child.  See Tex. Fam. Code Ann. § 161.001; Yonko
v. Dep’t of Family & Prot. Servs., 196 S.W.3d 236, 242 (Tex. App.—Houston
[1st Dist.] 2006, no pet.).  In reviewing the sufficiency
of the evidence to support the second prong, a reviewing court examines a
number of factors, including (1) the desires of the child, (2) the present and
future physical and emotional needs of the child, (3) the present and future
emotional and physical danger to the child, (4) the parental abilities of the
persons seeking custody in promoting the best interest of
the child, (5) the programs available to assist these individuals to promote
the best interest of the child, (6) the plans for the
child by the individuals or agency seeking custody, (7) the stability of the
home or proposed placement, (8) acts or omissions of the parent which may
indicate the existing parent-child relationship is not appropriate, and (9) any
excuse for the parent’s acts or omissions.  See Holley v. Adams,
544 S.W.2d 367, 371–72 (Tex. 1976).  A finding in support of “best
interest” does not require proof of any unique set of factors, nor does it
limit proof to any specific factors.  Id.

Because of Rebecca’s
very young age, she was unable to articulate her desires at trial.  The
evidence reflects that Jennifer visited Rebecca at every opportunity.  According
to testimony from the Department employee, Rebecca was placed in a safe
environment with her siblings, and continues to live with a foster family who has
bonded with the child and who is willing to adopt all of the children together. 
In contrast, Jennifer admitted that she was unable to provide a safe, stable
environment for Rebecca; Jennifer indicated that she moved frequently in the
ten months Rebecca was in Jennifer’s care and did not have a home.  Jennifer
indicated that she had little means of financial support without a job; at the
time of trial, Jennifer had no job, but she was regularly searching.  A parent
who lacks stability, income, and a home is unable to provide for a child’s
emotional and physical needs.  See In re C.A.J., 122 S.W.3d 888, 894
(Tex. App.—Fort Worth 2003, no pet.) (concluding evidence was sufficient to
support best-interest finding for mother who admitted being unable to care for
child, had no stable source of income or permanent home).  This undisputed evidence
weighs in favor of the trial court’s finding.  

The Department claimed
to have attempted to work with Jennifer in order to reunite Rebecca and
Jennifer.  However, the evidence reflects that Jennifer did not comply with the
requirements set forth in the family service plan, including maintaining a home
and job and successfully completing individual therapy.[5]  Jennifer
admitted that until she could “get back on her feet,” she could not provide a
safe, stable home for Rebecca even though that requirement was a condition for reuniting
the mother and child.  On this basis, the evidence weighs in favor of the trial
court’s finding.  See M.D.V., 2005 WL 2787006, at *8.

When weighing the
evidence as it relates to the Holley factors, a factfinder could
reasonably form a firm belief or conviction that the termination of Jennifer’s parental
rights is in Rebecca’s best interest.  See J.L., 163 S.W.3d at
88.  Under the clear and convincing standard, the evidence is legally and
factually sufficient to support the trial court’s findings that Jennifer
engaged in the conduct prescribed in subsection 161.001(1)(E) and that
termination of the parent-child relationship is in Rebecca’s best interest.  See
Tex. Fam. Code Ann. § 161.001; C.A.J., 122 S.W.3d at 894. 
Therefore, we overrule Jennifer’s second issue.

The trial court’s
judgment is affirmed.

 

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson,
Frost, and Seymore.

 









[1]
To protect the privacy of the parties in this case, we identify the child by a
fictitious name and the mother by her first name only.  See Tex. Fam. Code Ann. § 109.002(d) (West 2008).





[2]
The alleged father and the unknown father are not parties to this appeal.  We
include only facts relating to them that are germane to the disposition of this
appeal.





[3]
Jennifer testified that she was working forty hours a week, and her employer
wanted her to work twelve hours each week during the day time.





[4]
Unless otherwise specified, any reference to a “section” pertains to the Texas
Family Code.





[5]
To the extent Jennifer argues that the family service plan was not ordered by
the trial court, the record contains a family service plan filed by the
Department on February 13, 2009.  The trial court approved and adopted the
family service plan without modification in a status hearing order signed on
the same date.  Although the family service plan was not an order from the
court, the trial court’s approval and adoption of the family service plan
established that compliance with the requirements of the family service plan
was necessary for Jennifer to be reunited with Rebecca.  See In re E.S.C.,
287 S.W.3d 471, 475 (Tex. App.—Dallas 2009, pet. denied); see also In re
K.L.A.C., No. 14-08-00960-CV, 2010 WL 184152, at *4 (Tex. App.—Houston
[14th Dist.] Jan 21, 2010, no pet.) (mem. op.).